## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**UNITED STATES OF AMERICA**                                        **PLAINTIFF**

**v.**                        **Case No. 4:24-CV-850-BRW**

**35 FIREARMS AND APPROXIMATELY 22,032**
**ASSORTED ROUNDS OF AMMUNITION SEIZED**
**FORM THE POSSESSION OF BRYAN MALINOWSKI**
**ON MARCH 19, 2024**                        **DEFENDANTS**

---

### BRIEF IN SUPPORT OF CLAIMANT'S MOTION TO DISMISS
### PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1),
### FED. R. CIV. P. 12(b)(6) AND SUPPLEMENTAL ADMIRALTY
### AND MARITIME CLAIMS RULE G(8)(b)(i)

---

Matt Stauffer (ABA No. 2012284)
Paul J. James (ABA No. 83091)
**JAMES & CARTER, PLC**
500 Broadway, Suite 400
Little Rock, AR 72201
(501) 372-1414 – Telephone
 (501) 372-1659 – Facsimile
mstauffer@jamescarterlaw.com
pjj@jamescarterlaw.com

*Attorneys for Claimant, Maria Del Socorro Malinowski, as Executor for the Estate of Bryan Malinowski*

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................... 1

    A. LEGAL STANDARD. ........................................................... 2

    B. SUMMARY BASIS OF DISMISSAL. ................................ 5

II.  PROCEDURAL BARS TO FORFEITURE. ................................ 6

    A. THE GOVERNMENT FAILED TO COMMENCE A
       RELATED CRIMINAL PROSECUTION. ........................ 6

        1.  Brief History of the Acquittal Provision ...................... 7
        2.  Parallel Criminal Case Required .................................. 7

    B. THE GOVERNMENT FAILED TO "PARTICULARLY NAME
       AND INDIVDIUALLY IDENTIFY" THE "QUANTITIES OF
       AMMUNITION" OR "DESCRIBE THE PROPERTY WITH
       REASONABLE PARTICULARITY". ................................ 10

III. SUBSTANTIVE BARS TO FORFEITURE ............................... 11

    A. THE GOVERNMENT'S COMPLAINT FAILED TO ALLEGE
       FACTS TO CONNECT ALL BUT THREE DEFENDANTS
       TO ALLEGED CRIMINAL VIOLATIONS
       (Excluding the Colt Defender Handgun). ........................ 15

        1.  Firearm Defendants in Firearms Dealing Provision ................ 16
        2.  Firearm Defendants in False Statement Provision .................. 18
        3.  Ammunition Defendants in Firearms Dealing Provision .......... 19

    B. THE GOVERNMENT FAILED TO ALLEGE FACTS THAT
       SUPPORT A CLAIM THAT MR. MALINOWSKI ENGAGED
       IN THE BUSINESS OF DEALING IN FIREARMS. ...................... 20

    C. THE GOVERNMENT'S COMPLAINT FAILS TO ALLEGE
       SUFFICIENTLY DETAILED FACTS IMPLICATING A FALSE
       OR FICTICIOUS STATEMENT—STRAW PURCHASE
       OF FIREARMS—OR THAT A FALSE STATEMENT WAS
       "KNOWINGLY" MADE. ...................................................... 22

        1.  ATF Form 4473, Question 21.a .................................... 23
        2.  Defining the Actual Buyer and the Straw Purchaser ............... 23

3.  The Purchaser is the Actual Buyer Regardless
    of Subsequent Sales ................................................................ 25

4.  Answering Question 21.a on ATF Form 4473 ........................... 26

5.  The Government's Deficient Complaint .................................... 26

IV.   CONCLUSION ................................................................................... 27

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                            Case No. 4:24-CV-850-BRW

35 FIREARMS AND APPROXIMATELY 22,032
ASSORTED ROUNDS OF AMMUNITION SEIZED
FORM THE POSSESSION OF BRYAN MALINOWSKI
ON MARCH 19, 2024                                          DEFENDANTS

BRIEF IN SUPPORT OF CLAIMANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1),
FED. R. CIV. P. 12(b)(6) AND SUPPLEMENTAL ADMIRALTY
AND MARITIME CLAIMS RULE G(8)(b)(i)

Comes the Claimant, Maria Del Socorro Malinowski, as Executor for the Estate of Bryan Malinowski ("Estate"), and for her Brief in Support of Motion to Dismiss, states:

## I.  INTRODUCTION

On March 19, 2024, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF) executed a search warrant at the home of Bryan and Maria Malinowski located at 4 Durance Ct., Little Rock, AR 72223. At 6:02 in the morning, ATF agents performed a forced entry into the home. Mr. Malinowski fired a gun in defense of himself and his wife from apparent armed intruders, In the exchange of gunfire, Mr. Malinowski was shot and killed.

After making entry into the home and clearing it of occupants, ATF agents

searched the home as authorized by the search warrant, and seized a reported 44 firearms; 22,252 rounds of assorted ammunition; $8,000 in U.S. currency; and two (2) silencers.[1] Additionally, the Arkansas State Police seized a single firearm, a Colt Defender .45 caliber handgun, which is alleged to be the firearm that Mr. Malinowski fired at the individuals (ATF agents) forcing their way into his home.

In Exhibit 1 to its Complaint,[2] the Government identified Defendants 1-34 as firearms seized by the ATF ("Firearm Defendants"). Additionally, the Government identified Defendants 35-45 as 22,032 rounds of ammunition, grouped in various quantities of "assorted ammunition" ("Ammunition Defendants"). Additionally, the State Police seized Defendant 46, a silver Colt Defender handgun ("Colt Defender Handgun").

There is no related criminal prosecution associated with the Defendant property.

## A.    LEGAL STANDARD

Federal Rules of Civil Procedure, Supplemental Admiralty and Maritime Claims Rule G ("Rule G") is the primary procedural rule applicable to the Government's forfeiture action. Pursuant to Rule G(8)(b)(i), a claimant may move to dismiss a forfeiture complaint under Fed. R. Civ. P. 12(b).

It is "well established that forfeiture statutes are strictly construed against the government." *Quoting United States v. Real Properties located at 7215 Longboat Drive*

---

[1] On December 3, 2024, the Government notified counsel that it has abandoned its claims against some of the items seized.

[2] **[Doc 1]** (October 7, 2024, Verified Complaint *In Rem*)

(*Lot 24*), 750 F.3d 968, 974 (8th Cir., 2014) (citations omitted). Forfeitures are not favored by the courts, and "should be enforced only when [they are] within both letter and spirit of the law." *United States v. One 1936 Model Ford V-8 De Luxe Coach, Motor No. 18-3306511*, 307 U.S. 219, 226 (1939).

Fed. R. Civ. P. 8 states that "[a] pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief…." Fed. R. Civ. P. 8(a)(2). In order to assert subject matter jurisdiction, the Government must name the Defendants with special particularity, or it lacks subject matter jurisdiction and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

When analyzing a 12(b) motion, the complaint's factual allegations are accepted as true and viewed in the light most favorable to the plaintiff. *Hanten v. Sch. Dist. Of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999) (citing *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999)). "At a minimum, however, a complaint must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations." *Id.* (quoting *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

An "important mechanism for weeding out meritless claims [is a] motion to

dismiss for failure to state a claim." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In evaluating a motion to dismiss, a district court should employ a two-pronged approach. First, the court should identify and set aside "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Second, the court should assume the veracity of the "well-pleaded factual allegations . . . and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

The Court should dismiss a complaint if the plaintiff has failed to "nudge[] [his] claims" of unlawful conduct "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. In other words, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then the complaint fails to "show[] that the pleader is entitled to relief" under Fed. R. Civ. P. 8(a)(2) and must be dismissed. *Iqbal*, 556 U.S. at 679. Similarly, a court should dismiss when, based on the plaintiff's own allegations, he has no cognizable claims. "[D]ismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir.

2001).

## B.    SUMMARY BASIS OF DISMISSAL

The Government asserts in its Complaint, ¶¶ 7 and 82, that it is entitled to forfeiture of Defendant Property pursuant to 18 U.S.C. § 924(d)(1), because it alleges that Mr. Malinowski committed offenses defined in 18 U.S.C. § 922(a)(1)(A) ("Firearms Dealing Provision") and 18 U.S.C. § 922(a)(6) ("False Statement Provision"). The Government's Complaint is deficient and should be dismissed for both procedural and substantive reasons.

Regarding its procedural deficiencies, the Government failed to commence a related criminal prosecution, which is necessary to pursue a forfeiture action pursuant to 18 U.S.C. § 924(d)(1).

As both a procedural and substantive defect, the Complaint only describes the Ammunition Defendants as "[number] Rounds Assorted Ammunition CAL: Assorted," violating the requirements of 18 U.S.C. § 924(d)(2)(C) and Rule G(2)(c). **[Doc 1]**, Exhibit 1.

For its substantive deficiencies, the Government failed to allege sufficiently detailed facts connecting specific Defendants with illegal activity. It also failed to allege sufficiently detailed facts that Mr. Malinowski "willfully" engaged in dealing firearms. Furthermore, the Government failed to identify a specific false or fictitious statement made by Mr. Malinowski's on an ATF Form 4473, and in the alternative, that Mr. Malinowski "knowingly" made a false or fictitious statement.

Additionally, the Government seeks forfeiture of the Colt Defender Handgun

pursuant to 18 U.S.C. § 924(d)(1), "willful… violation of any other criminal law of the United States," specifically 18 U.S.C. § 111. **[Doc 1]**, ¶¶ 7 and 82. The Claimant asserts that it is entitled to return of the Colt Defender Handgun because Mr. Malinowski was acting in self-defense of himself, his wife, and his home when he fired at armed intruders, whom he was unaware were ATF agents. Additionally, the Government failed to commence a related criminal prosecution in accordance with 18 U.S.C. 924(d)(1).

## II.    <u>PROCEDURAL BARS TO FORFEITURE</u>

### A.    **THE GOVERNMENT FAILED TO COMMENCE A RELATED CRIMINAL PROSECUTION.**

Absent an ongoing or successful criminal prosecution, the Government cannot pursue an action for forfeiture of the Defendant Property pursuant to 18 U.S.C. § 924(d)(1). *United States v. One Smith & Wesson 66 Revolver*, No. CV413-043, 2016 WL 1276443 at 2 (S.D. Ga., Mar. 30, 2016) (Custom and Border Protection agents seized a firearm from the claimant and failed to initiate a criminal prosecution against him).

Specifically, 18 U.S.C. § 924(d)(1) provides that:

> Upon acquittal of the owner or possessor, or dismissal of the charges against him… the seized or relinquished firearms or ammunition shall be returned forthwith to the owner or possessor or to a person delegated by the owner or possessor.

The plain language of 18 U.S.C. § 924(d)(1) presupposes that the Government commence a criminal prosecution under 18 U.S.C. § 922 before property is subject to forfeiture. *United States v. One Smith & Wesson 66 Revolver*, No. CV413-043, 2016

WL 1276443 at 2 (S.D. Ga., Mar. 30, 2016). To allow forfeiture without a related criminal prosecution "would render that portion of § 924 an absolute nullity." *Id.*

### 1. *Brief History of the Acquittal Provision*

Prior to 1984, the Supreme Court of the United States held that acquittal on the criminal charges precluded a subsequent forfeiture action under 18 U.S.C. § 924. *Coffey v. United States*, 116 U.S. 436 (1886). The Supreme Court overruled this holding in 1984, and instead held that a criminal acquittal under 18 U.S.C. § 924 does not bar a subsequent forfeiture of firearms based upon the same facts. *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362 (1984).

Two years later, in 1986, Congress passed the Firearm Owner's Protection Act ("FOPA of 1986") for the stated purpose, inter alia, to "correct existing firearms statutes" and protect the rights of citizens "against uncompensated taking of property." Firearm Owners' Protection Act of 1986, S. 49 (H.R. 4332), 99th Cong. § 1(a)(c).[3] With the FOPA of 1986, Congress amended 18 U.S.C. § 924(d)(1) to include the specific language ("Acquittal Provision") that "upon acquittal of the owner or possessor… the seized firearms and ammunition shall be returned forthwith." *Id.* at § 104(a) (3).

### 2. *Parallel Criminal Case Required*

The use of the word "acquittal" in the statute cannot be superfluous; for it is a court's "obligation to give meaning where possible to each word and provision in the Code." *Fischer v. United States*, 603 U.S. 480, 493 (2024). And as noted previously,

---

[3] Pub. L. 99–308, May 19, 1986, 100 Stat 449.

"forfeiture statutes are strictly construed against the government." *Quoting United States v. Real Properties located at 7215 Longboat Drive (Lot 24)*, 750 F.3d 968, 974 (8th Cir., 2014) (citations omitted).

Applying the unique Acquittal Provision in 18 U.S.C. § 924(d)(1), the District Court for the Southern District of Georgia stated that "[t]he plain language of this statute appears to require some sort of conviction under § 922 before Defendant Firearms are subject to forfeiture." *United States v. One Smith & Wesson 66 Revolver*, No. CV413-043, 2016 WL 1276443 at 2 (S.D. Ga., Mar. 30, 2016). The district court further noted that the Government cited no case or authority that was contrary to its decision. *Id.*

In an action for forfeiture in rem, "it is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned. And in a criminal prosecution it is the person who is accused, proceeded against, convicted, and punished." Quoting *Waterloo Distilling Corporation v. United States*, 282 U.S. 577, 581 (1931).

However, the unique Acquittal Provision of 18 U.S.C. § 924(d)(1) specifically ties the fate of the seized property to that of the accused person—acquittal of the accused also acquits the property, which "shall be returned forthwith to the owner or possessor."

To preclude an acquittal, the Government is required to prove the elements of the alleged criminal offenses with the requisite burden of proof—beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970) (the Due Process Clause requires "proof

beyond a reasonable doubt of every fact necessary to constitute [a] crime"). Furthermore, those who have been acquitted of criminal charges have been endowed with the accompanying protections afforded by United States Constitution, including the Fifth Amendment right to have the case first presented to a grand jury for felony offenses, *Ex Parte Wilson*, 114 U.S. 417, 429 (1885), and the Sixth Amendment Rights to a trial by a jury, *Ramos v. Louisiana*, 590 U.S. 83, 93 (2020); that the jury render a unanimous verdict,  *Id.*;  to effective assistance of counsel, *Powell v. State of Alabama*, 287 U.S. 45, 70 (1932); to confront all witnesses, *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309-10 (2009); and to testify on his or her own behalf, *Rock v. Arkansas*, 483 U.S. 44, 50-53 (1987).

A forfeiture action under 18 U.S.C. § 924(d)(1) without a parallel criminal prosecution precludes most, if not all, of the aforementioned rights.

More importantly, allowing a forfeiture action under § 924 without a parallel criminal prosecution would require the Court to establish two separate systems in applying the same provision of the same forfeiture statute to identical facts—with the exception that in one instance the Government filed related criminal charges. The language of 18 U.S.C. § 924(d) does not indicate that it was Congress's intent to create a disparity in forfeiture proceedings based solely on the Government's criminal filing decision or its ability to obtain a criminal indictment.[4]

Because the Government has failed to initiate a criminal prosecution connected with or related to any Defendant, the Defendant Property is not subject to

---

[4] See *Rehberg v. Paulk*, 566 U.S. 356, 358 (2012) (The prosecutor—United States Attorney—is the party responsible for initiating a criminal prosecution).

forfeiture pursuant to 18 U.S.C. § 924(d)(1).

**B.    THE GOVERNMENT FAILED TO "PARTICULARLY NAME AND INDIVDIUALLY IDENTIFY" THE "QUANTITIES OF AMMUNITION" OR "DESCRIBE THE PROPERTY WITH REASONABLE PARTICULARITY."**

Pursuant to Rule G(2)(f), the Government's Complaint must "describe the property with reasonable particularity." Accordingly, the specific forfeiture statute, 18 U.S.C. § 924(d)(2)(C), provides that "[o]nly those… quantities of ammunition *particularly named and individually identified*" as involved in or used in a violation of Title 18 of the United States Code, Chapter 44 "shall be *subject* to… forfeiture." (emphasis added).

In its Complaint, both in the caption and in the body, the Government only describes the Ammunition Defendants as "Approximately 22,032 assorted rounds of ammunition." In Exhibit 1 to its Complaint, the Government identified a quantity of rounds associated with each Ammunition Defendant, but each Defendant is identified by the same vague description, which is "[number of] Rounds Assorted Ammunition CAL: Assorted."

The Complaint fails to identify the caliber or the manufacturer of any of the Ammunition Defendants. The Claimant and the Court are left with no basis to presume—let alone know—if a particular Ammunition Defendant consists of .308 Winchester bullets, 9mm Hornaday, or any other combination of caliber and manufacturer. As the Complaint identified each Defendant as "assorted," the reader must conclude that a specific Ammunition Defendant is comprised of various caliber and manufacturer combinations including any conceivable combination of caliber and

manufacturer.

As the Complaint fails to identify any Ammunition Defendant's caliber or manufacturer, there is no quantity of ammunition that is "particularly named" or individually identified." A defendant generally identified only as "assorted ammunition," by its very nature, cannot be a "quantit[y] of ammunition particularly named and individually identified."

Furthermore, there is no basis for the Court or the Claimant to know which Ammunition Defendants are alleged to have been involved in any act or offense or otherwise associated with any Firearm Defendant or the sale or any firearm.

The Government's Complaint does not comply with the specific requirements of 18 U.S.C. § 924(d)(2)(C), and the Government has failed to "describe the property with reasonable particularity" in accordance to Rule G(2)(c). Failure to comply with either statute or rule is sufficient to dismiss the Government's Complaint as to the Ammunition Defendants. Failure to comply with both, combined, is an appropriate basis to dismiss the Complaint against the Ammunition Defendants.

### III.   <u>SUBSTANTIVE BARS TO FORFEITURE</u>

*APPLICABLE LAW*

<u>Rule G imposes a heightened pleading requirement</u>. Pursuant to Fed. R. Civ. P. G(8)(b), a claimant may move to dismiss a forfeiture complaint, and the sufficiency of the complaint is governed by Rule G(2). In accordance with Rule G(2), among other requirements, a complaint must: (c) describe the property with reasonable particularity; (e) identify the statute under which forfeiture is brought; and (f) state

sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Rule G imposes a "heightened pleading [requirement] for complaints in civil forfeiture actions." *United States v. 5012 North 6th Street, Blytheville, Ark.*, 2014 WL 5590555, 7 (E.D. Ark., 2014). This "heightened pleadings" requirement is appropriate "because of the drastic nature of civil forfeiture remedies." *Id.* (quoting *United States v. All Assets Held at Bank Julius Boer & Co., Ltd.*, 571 F.Supp.2d 1, 16 (D.C. Cir. 2008)).

Under Rule G, "the pleading requirements [of the] complaint are tied to the [G]overnment's burden of proof at trial." *United States v. 5012 North 6th Street, Blytheville, Ark.*, 2014 WL 5590555, 7 (E.D. Ark., 2014).

<u>The Government is required to prove the criminal offense beyond a reasonable doubt</u>. Applying the acquittal provision in 18 U.S.C. § 924(d)(1), the District Court for the Southern District of Georgia stated that "[t]he plain language of this statute appears to require some sort of conviction under § 922 before Defendant Firearms are subject to forfeiture." *United States v. One Smith & Wesson 66 Revolver*, No. CV413-043, 2016 WL 1276443 at 2 (S.D. Ga., Mar. 30, 2016) (claimant was never charged with a criminal offense).

To preclude an acquittal, the Government is required to prove each element of the alleged offenses beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970) (the Due Process Clause requires "proof beyond a reasonable doubt of every fact necessary to constitute [a] crime").

The language of 18 U.S.C. § 924(d) does not indicate that it was Congress's intent to create multiple burdens of proof in establishing elements of the alleged criminal offense, as it did with the burdens of connecting the defendant property with the criminal offense. 18 U.S.C. § 924(d)(1) and (d)(2)(C) (involved in and used in versus intended to be used in).

<u>The Government must allege facts supporting a willfully or knowingly mental state</u>. Prior to 1986, 18 U.S.C. §§ 922(a) (1) and 924 "omitted an express scienter requirement and therefore arguably imposed strict criminal liability." *Bryan v. United States*, 524 U.S. 184, 187 (1998). However, Congress enacted the Firearm Owners' Protection Act of 1986 "in part, to cure these omissions." *Id.*

18 U.S.C. § 924(a) codifies the requisite mental state for each offense—§ 924(a)(1)(D) punishes those who "willfully" violate the Firearms Dealing Provision,[5] and § 924(a)(2) punishes those who "knowingly" violate the False Statement Provision. *Bryan v. United States*, 524 U.S. 184, 191-93 (1998). The culpable mental state applies to each element of the criminal offense." *Rehaif v. United States*, 588 U.S. 225, 22-30 (2019).

The Supreme Court of the United States defined the "willful" mens rea in the Firearms Dealing Provision, requiring proof that "the defendant acted with an evil-meaning mind, that is to say that he acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 193 (1998). The Government must prove that a defendant had knowledge that he was breaking the law. *Id.* at 196.

---

[5] 18 USC § 924(a) (1) (D) punishes persons who "willfully" violate any provision of Chapter 44—which includes 18 USC § 922(a)(1)(A), the Firearm Dealing Provision.

The Supreme Court of the United States also defined "knowingly" within the context of the False Statement Provision and held that a person acts "knowingly" when he "knew that [he] was making false statements... when [he] acquired a firearm." *Dixon v. United States*, 548 U.S. 1, 5-6 (2006) (citing *Bryan v. United States*, supra).

The Government's heightened pleading requirements are tied to the Government's burden of proof. The Government's heightened pleading requirement, attached to the appropriate burden of proof and the requisite mens rea, demands the Government to establish the following sufficiently detailed facts that a reasonable belief exists that the Government will prove at trial:[6]

That Mr. Malinowski—beyond a reasonable doubt:

    1.    "Willfully" violated the Firearms Dealing Provision—that he acted with an evil-meaning mind, with knowledge that his conduct was unlawful; and/or

    2.    "Knowingly" violated the False Statement Provision—that he made a false statement and that he knew the statement was false;

And either:[7]

    1.    The Defendant Property (by a preponderance of the evidence)[8] was involved in or used in the criminal offense; or

    2.    The Defendant Property (by clear and convincing evidence)[9] was intended to be used in the criminal offense. This is done by proving that the specific Defendant was "involved in a pattern of activities" that include the criminal offense.[10]

---

[6] FRCP SUPP AMC Rule G(2)(f).

[7] 18 U.S.C. § 924(d)(1) and (d) (2) (C).

[8] 18 U.S.C. § 983(c) (1).

[9] 18 U.S.C. § 924(d)(1) and (d) (2) (C).

[10] 18 U.S.C. § 924(d)(1) and (d)(3)(C).

The Government's Complaint fails to make allegations that support each element or part of their claims. It fails to allege sufficiently detailed facts to meet its Rule G(2)(f) burden that (1) a criminal offense occurred; and (2) that the Defendant Property was involved or used in a criminal offense or was intended to be used in a criminal offense.

Based on the legal standards set forth above, the factual allegations in the Complaint are deficient as set forth below.

## A.    THE GOVERNMENT'S COMPLAINT FAILED TO ALLEGE FACTS TO CONNECT ALL BUT THREE DEFENDANTS TO ALLEGED CRIMINAL VIOLATIONS (Excluding the Colt Defender Handgun).

Even if the Government's Complaint adequately alleged one or more criminal offenses—which it does not—the Complaint completely fails to connect all but three Firearm Defendants to the alleged offenses (excluding the Colt Defender Handgun).

The Complaint fails to make factual allegations against the following Firearm Defendants that would identify a specific Defendant as involved or used in an alleged offense or intended to be used in an alleged offense: Defendants 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31, and 32. And the Complaint fails to make factual allegations against all Ammunition Defendants.

It is, in fact, easier to recite which Firearm Defendants the Government has arguably made specific allegations against: Defendants 9, 27, and 33.

The Government must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *United States v. Seventy-*

*Nine Thousand Three Hundred Twenty-One Dollars*, 522 F.Supp.2d 64, 67-68 (D.C., 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level," and "the court need not accept inferences drawn by the Government if such inferences are unsupported by the facts set out in the complaint." *Id.* at 68. "Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.*

The Government asserts its basis for forfeiture in ¶¶ 79 and 80 of its Complaint: that (1) the Firearm Defendants were involved in or intended to be involved in the Firearms Dealing Provision; (2) the Firearm Defendants were involved in the False Statement Provision; and (3) the Ammunition Defendants "were similarly involved or intended to be used in the same" Firearms Dealing Provision.

### 1. *Firearm Defendants in Firearms Dealing Provision*

The Government asserts in ¶ 79 of its Complaint that the Firearm Defendants are subject to forfeiture under the Firearms Dealing Provisions because they were either:

> (a)    "tagged for sale at the time of seizure";
>
> (b)    "listed on the same multiple sales reports as firearms recovered by law enforcement from other individuals during the commission of a crime"; and/or
>
> (c)    "are the same make and model as other firearms known to have been sold by Mr. Malinowski."

The Complaint fails to allege facts that identify any Firearm Defendant that was tagged for sale. The only reference to a "tagged" firearm was the one sentence in

¶ 79 of the Complaint, which asserts "tagged" firearms as the basis for forfeiture. The Claimant and the Court are left to pure conjecture as to which of the Firearm Defendants the Government alludes. Furthermore, there's no allegation that the firearms were "tagged for sale" by Bryan Malinowski, as opposed to firearms that he may have purchased from a private seller that were already tagged. To that end, the Complaint is utterly void of context and information.

The Claimant and the Court are left to pure conjecture to determine which Firearm Defendants are "listed on the same multiple sales report as [other] firearms recovered by law enforcement from other individuals during the commission of a crime." In ¶¶ 27-31 of its Complaint, the Government asserts that "multiple sale summary reports" were reviewed by the ATF agents. However, the Complaint fails to identify or provide a specific multiple sales summary. With the arguable exception of Defendant 9 (Glock Model 45) in ¶ 31, the Claimant and the Court have no ability to identify any Firearm Defendant listed on the same Multiple Sales Report as any other firearm, let alone "firearms recovered by law enforcement from other individuals."

Regarding the "same make and model as other firearms known to have been sold," the Government's Complaint only identifies Defendants 9, 27, and 33 as meeting those criteria. The Complaint only alleges 8 sales by Mr. Malinowski, which include the following:

      (a)      Paragraph 36, Glock Model 45 sold to "W-1"—same make and model to Defendant 9;

      (b)      Paragraph 43, Glock Model 17 sold to "W-1"—not similar to any Defendant;

(c)     Paragraph 43, Ruger LCP .380 sold to "W-1"—not similar to any Defendant;

(d)     Paragraph 45, Glock Model 45 recovered in California—same make and model to Defendant 9;

(e)     Paragraph 46, Glock Model 43 recovered in California—not similar ("the same make and model") as any Defendant;[11]

(f)     Paragraph 55, FSAAP Model FR-16 pistol sold to an ATF undercover agent—not similar to any Defendant;

(g)     Paragraph 55, Glock Model 30 sold to an ATF undercover agent—not similar to any Defendant;

(h)     Paragraph 56, SCCY Model CPX-2 sold to an ATF undercover agent—same make and model as Defendants 27 and 33.

Based on a review of the Government's claims against the Firearm Defendants for violating the Firearm Provision, none are sufficiently described as tagged for sale, arguably Defendant 9 can be attributed to a Multiple Sales Report, and only Defendants 9, 27, and 33 are the same make and model as firearms known to have been sold or otherwise transferred to another person.

### 2. *Firearm Defendants in False Statement Provision*

Additionally, the Government asserts in ¶ 79 of its Complaint that Mr. Malinowski falsely stated that he was the actual transferee/buyer for the firearms." However, the Government's Complaint fails to connect a specific Firearm Defendant with a particular ATF Form 4473 signed by Mr. Malinowski. *See* discussion *Infra*,

---

[11] It should be noted that Defendants 10 and 11 are both a Glock 43x. However, the "x" designation changes the model of the firearm. When compared to the Glock 43, the Glock 43x is taller, longer, wider, heavier, and has a longer barrel and a greater magazine capacity. See Claimant's Exhibit 1 to its Motion to Dismiss, which was obtained from https://us.glock.com/en/Pistols (last viewed December 10, 2024).

Part III.B. Furthermore, the Government fails to even identify or allege which Firearm Defendants were purchased by Mr. Malinowski from an entity with a Federal Firearms License ("FFL"), triggering the requirement for Mr. Malinowski to complete an ATF Form 4473. *See* **[Doc 1]**, ¶¶ 18-20.

### 3. *Ammunition Defendants in Firearms Dealing Provision*

In ¶ 80, the Government asserts that the Ammunition Defendants "were similarly involved in the same violations" as the Firearm Defendants. However, the Complaint fails to allege how the specific Ammunition Defendants were "similarly involved." The Complaint makes no allegations that any specific Ammunition Defendant was offered for sale or was otherwise involved in or intended to be involved in alleged illegal activity. Claimant is left to pure speculation as to which specific Ammunition Defendants were supposedly involved in or intended to be involved in which violation with which firearm.[12]   Attempting this task is impossible to undertake because the Complaint fails to identify the caliber of the Ammunition Defendants so that the Claimant or the Court could attempt to link a specific Ammunition Defendant with a specific firearm.

Other than Defendants 9, 27, and 33 (and arguably Defendant Colt Defender Handgun for different reasons), the Government's Complaint fails to make any allegations that link a specific Defendant to any basis of forfeiture alleged by the Government.

---

[12] As noted above in this Motion, every Ammunition Defendant is identified by the Government with the same vague description, which is "[number of] Rounds Assorted Ammunition CAL: Assorted."

## B.    THE GOVERNMENT FAILED TO ALLEGE FACTS THAT SUPPORT A CLAIM THAT MR. MALINOWSKI ENGAGED IN THE BUSINESS OF DEALING IN FIREARMS.

Of the very few Defendants that the Government has made allegations against (Defendants 9, 27, and 23), its Complaint is deficient because it does not support a reasonable belief that the Government will be able to prove the appropriate mens rea at trial—that Mr. Malinowski "willfully" engaged in the business of dealing firearms. This defect is fatal to the Government's Complaint against all Firearm Defendants and Ammunition Defendants.

The Government must allege in its Complaint that Mr. Malinowski "had knowledge that he was breaking the law." See *Bryan v. United States*, 524 U.S. 184, 192-93 (1998). The Government's Complaint failed to allege the facts that Bryan Malinowski willfully violated the law. In fact, the Complaint is void of the word "willful," other iterations of the word, or synonyms.

The United States Code charges the ATF with promulgating rules and regulations, through the Code of Federal Regulations,[13] that are necessary to carry out the provisions 18 U.S.C. Chapter 44,[14] which include the offenses for which Mr. Malinowski was accused in the Government's Complaint. At all relevant times, 27 C.F.R § 478.11 defined a "dealer in firearms" as "[a] person who devotes time, attention, and labor to dealing in firearms…*with the principal objective of livelihood*

---

[13] See 18 U.S.C. § 926 (Attorney General is granted rule-making authority); see also 28 C.F.R. § 0.130(c) (Attorney General delegates rule-making authority to the ATF); ATF Final Rule 03-1657 (redesignating 28 C.F.R. § 47, with relevant parts designated as 28 C.F.R. § 478).

[14] 27 C.F.R. § 478.1 states that "[t]he regulations contained in this part… are promulgated to implement… 18 U.S.C. Chapter 44, of the Gun Control Act of 1968."

*and profit.*" 27 C.F.R. § 478.11 ("Engaged in the business," subsection (c)) (amended April 19, 2024) (emphasis added). At all relevant times, defined the term "*principal objective* of livelihood and profit" to mean that "[t]he intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents." 27 C.F.R. § 478.11 ("Principal objective of livelihood and profit") (amended April 19, 2024) (emphasis added).

The only revenue the Government has identified that Mr. Malinowski generated from the sale of firearms over the span of two (2) years was a gross revenue of less than $1,000. See **[Doc 1]**, ¶¶ 59 and 60. Additionally, Mr. Malinowski stated to undercover ATF agents at a gun show that he "was a private seller, and, therefore, no paperwork was needed to be completed for a purchase." **[Doc 1]**, ¶ 53.

The Government's Complaint failed to allege facts that would establish that Mr. Malinowski bought, possessed, or sold firearms "with the principal objective livelihood." The Government's Complaint fails to allege any facts regarding Mr. Malinowski's livelihood. Furthermore, the Government's Complaint failed to allege facts that would establish that Mr. Malinowski bought, possessed, or sold firearms to predominantly earn a profit.

The Government has failed to allege sufficiently detailed facts to support a belief that Mr. Malinowski acted "willfully"—that he "acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 192-93 (1998). This defect prohibits the Government from prevailing in a forfeiture action under any burden of proof, especially the burden of "beyond a reasonable doubt."

**C.    THE GOVERNMENT'S COMPLAINT FAILS TO ALLEGE SUFFICIENTLY DETAILED FACTS IMPLICATING A FALSE OR FICTICIOUS STATEMENT — STRAW PURCHASE OF FIREARMS — OR THAT A FALSE STATEMENT WAS "KNOWINGLY" MADE.**

The Government has failed to make sufficient allegations that Mr. Malinowski made a false or fictitious statement, because it has failed to allege or identify a third-party whom Mr. Malinowski was purchasing a firearm "on behalf of" at the time he completed an ATF Form 4473.

The Government's Complaint asserts that the Firearm Defendants are subject to forfeiture pursuant to 18 U.S.C. 922(a)(6), which prohibits knowingly making any false or fictious oral or written statement when acquiring or attempting to acquire a firearm. In ¶¶ 20 and 79 of its Complaint, the Government directly identifies ATF Form 4473, Question 21.a (also referred to as "Question 21.a"), which asks if the purchaser is the "actual transferee/buyer" of the firearm. In ¶ 79 of its Complaint, the Government asserts that Mr. Malinowski "falsely" stated that he "was the actual transferee/buyer of [Firearm Defendants]" in violation of 18 U.S.C. § 922(a)(6).

To support its assertion of a criminal offense, the Government misstates and misrepresents Question 21.a in ¶ 21 of its Complaint. The Complaint asserts that "[t]he instructions for the ATF Form 4473 make clear that an individual purchasing a firearm with the intention of selling the firearm to a third party for money is not the actual transferee/buyer." **[Doc 1]** (October 7, 2024, Verified Complaint *In Rem*), ¶ 21. This mischaracterization is not the question posed by Question 21.a and cannot support the basis for a criminal offense or civil forfeiture.

The Government's misstatement of the language of ATF Form 4473 is the basis

of its claims against Mr. Malinowski under the False Statement Provision. The Government's misstatement is contradicted by both the ATFs own publications and by statute.

### 1. ATF Form 4473, Question 21.a

The Government, in its Complaint, fails to recite the specific language of Question 21.a, which states:

> Are you the actual transferee/buyer of all the firearm(s) listed on this form…?  Warning: You are not the actual transferee/buyer if you are acquiring any of the firearm(s) on behalf of another person.

The language used in ATF Form 4473, Question 21.a, "actual transferee/buyer," is not a general phrase, but rather is a specific term used by the ATF to identify a straw purchaser. See *Abramski v. United States*, 573 U.S. 169 (2014); See also What is a Straw Purchase?*, FFL NEWSLETTER, FEDERAL FIREARMS LICENSEE INFORMATION SERVICE, June 2021, at 1;[15] "Straw Purchases" of Firearms*, FFL NEWSLETTER, FEDERAL FIREARMS LICENSEE INFORMATION SERVICE, 1992 Vol. 1, at 1;[16] "Straw Purchases" of Firearms*, FFL NEWSLETTER, FEDERAL FIREARMS LICENSEE INFORMATION SERVICE, 1989 Vol. 2, at 1.[17]

### 2. Defining the Actual Buyer and the Straw Purchaser

A buyer is a "straw" when there is a known third-party whom he is purchasing the firearm on behalf of. In a straw purchase, the actual buyer enlists an intermediary

---

[15] https://www.atf.gov/firearms/docs/newsletter/federal-firearms-licensee-ffl-newsletter-june-2021/download (last viewed December 10, 2024)

[16] https://www.atf.gov/firearms/docs/newsletter/federal-firearms-licensees-newsletter-1992-volume-1/download (last viewed December 10, 2024)

[17] https://www.atf.gov/firearms/docs/newsletter/federal-firearms-licensees-newsletter-1989-volume-2/download (last viewed December 10, 2024)

to help the actual buyer purchase a firearm from a licensed dealer. *Abramski v. United States*, 573 U.S. 169, 180 (2014). The individual who sends a straw man to a gun store to buy a firearm is the person transacting with the dealer. *Id.* at 186.

Pursuant to 18 U.S.C. § 932(b), titled "Straw Purchasing of Firearms," "it shall be unlawful to knowingly purchase... any firearm... *on behalf of... another person*, knowing or having reasonable cause *that such other person*" cannot legally possess the firearm. 18 U.S.C. § 932(b) (emphasis added).

The ATF periodically publishes newsletters "to keep Federal firearms Licensees (FFLs) abreast of changing Federal firearms laws and regulations." FFL NEWSLETTER, FEDERAL FIREARMS LICENSEE INFORMATION SERVICE, June 2021, at 1.[18] In its newsletter published June 2021, the ATF wrote that "a straw purchase occurs when the *actual buyer* [(i.e. third-party)] uses another person ('straw purchaser') to execute the Form 4473 purporting to show that the straw purchaser is the *actual purchaser* of the firearm." *Id.* (emphasis added). It is a scheme that the actual buyer and the strawman execute together. *See Id.*

The ATF published an example at the bottom of its ATF Form 4473 to provide guidance in answering Question 21.a—to identify when the purchaser is a "straw" and not the actual buyer:

> Mr. Smith asks Mr. Jones to purchase a firearm for Mr. Smith... Mr. Smith gives Mr. Jones the money for the firearm. Mr. Jones is NOT THE ACTUAL TRASNFEREE/BUYER of the firearm and must answer "no" to question 21.a.

*See* Claimant's Exhibit 2, ATF Form 4473 (emphasis in the original).

---

[18] https://www.atf.gov/firearms/docs/newsletter/ffl-newsletter-september-2016/download (last viewed December 10, 2024).

### 3. *The Purchaser is the Actual Buyer Regardless of Subsequent Sales*

Congress did not intend the False Statement Provision to control private sellers' secondary transactions that are initiated and executed after the original licensed dealer's sale concluded. *Abramski v. United States*, 573 U.S. 169, 185 (2014) ("Congress decided to regulate dealers' sales, while leaving the secondary market for guns largely untouched.").

In oral arguments to the Supreme Court of the United States on January 22, 2014, Justice Scalia posed the following scenario and question to the Assistant to the Solicitor General:

> I buy [a gun] and walk out of the store and I meet this guy in the parking lot, he says: Hey, that's a nifty looking gun there. How much did you pay for it?  [I say]: You know, I paid 600 dollars. [He says:] I'll give you 700. [And I say:] Oh, it's yours."…Right?  I can hand it to him, can't I?

The Assistant to the Solicitor General responded:

> You could, Justice Scalia.

*See* Tr. of Oral Arg. at 34-35, *Abramski v. United States*, 573 U.S. 169, 200 (2014). See Claimant's Exhibit 3.

This point is further acknowledged by the ATF and demonstrated in its explanation regarding purchasing a firearm for a raffle, which is provided both online[19] and in its June 2021 Newsletter. *Firearm Raffles,* FFL NEWSLETTER, FEDERAL FIREARMS LICENSEE INFORMATION SERVICE, June 2021, at 8-9.[20]  According

---

[19] https://www.atf.gov/firearms/qa/how-may-licensee-participate-raffling-firearms-unlicensed-organization (last viewed December 10, 2024)

[20] https://www.atf.gov/firearms/docs/newsletter/federal-firearms-licensee-ffl-newsletter-june-2021/download (last viewed December 10, 2024)

to ATF's guidance, a firearms seller may sell or transfer a firearm to a buyer, even though the buyer's sole purpose is to place the firearm in a raffle. *Id.* at 8, Example 2. At the time that the buyer acquires the firearm from the seller, the ATF does not consider him to be a straw purchaser. The ATF requires the buyer to complete an ATF Form 4473 using his own personal information. *Id.* The ATF Form 4473 requires the buyer to answer "yes" to Question 21.a that he is the actual buyer/transferee; and "certify" the following statement:

> I understand that answering 'yes' to question 21.a if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law.

*See* Claimant's Exhibit 2. After the firearm is raffled, the "winner" is not required to complete an ATF form 4473 because the buyer (organization representative) putting on the raffle is not considered by the ATF as a licensee. *Firearm Raffles, supra* at 8.

### 4. *Answering Question 21.a on ATF Form 4473*

Accordingly, when responding to ATF Form 4473, Question 21.a, a person should answer "NO"—that they are NOT the actual buyer/transferee—when there is a specific third-party that the "straw purchaser" is acquiring the firearm "on behalf of." And absent a specific third-party, whom the ATF calls the "actual purchaser," the person answering Question 21.a is the actual buyer and should answer the question, "Yes."

### 5. *The Government's Deficient Complaint*

The Government, in its Complaint, failed to identify or allege a third-party who represented the "actual buyer" for whom a firearm was purchased "on behalf of" at the time Bryan Malinowski completed an ATF Form 4473. And absent a third-party

"actual buyer," Mr. Malinowski was not a straw purchaser—Mr. Malinowski legally and properly answered "Yes" that he was the actual buyer.

In order to meet its burden of proof at trial, the Government must prove that Mr. Malinowski "knowingly" provided false or fictitious answers in response to ATF Form 4473, Question 21.a. *See* 18 U.S.C. § 922(a)(6) and 18 U.S.C. § 924(a)(2). It has provided no information that Mr. Malinowski "knowingly" made a false statement.

The Government's Complaint failed to allege sufficiently detailed facts that it would meet its burden.

## IV.  <u>CONCLUSION</u>

Based on the foregoing, Claimant respectfully requests that the Court grant her Motion to Dismiss and order the Government to return to the Claimant all property seized on March 19, 2024.

Respectfully submitted,

Matt Stauffer (ABA No. 2012284)
Paul J. James (ABA No. 83091)
**JAMES & CARTER, PLC**
500 Broadway, Suite 400
Little Rock, AR 72201
(501) 372-1414 – Telephone
 (501) 372-1659 – Facsimile
mstauffer@jamescarterlaw.com
pjj@jamescarterlaw.com

***Attorneys for Claimant***

## CERTIFICATE OF SERVICE

I, Matt Stauffer, hereby certify that on December 11, 2024, I served the foregoing via the Court's electronic filing system (ECF) and via first class mail, postage prepaid, upon the following:

United States Attorney's Office
**Attn: AUSA Amanda Jegley**
425 W. Capitol Ave., Suite 500
Little Rock, AR 72201-3536

P.O. Box 1229
Little Rock, AR 72203