IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                        CASE NO. 4:24CV00850-BRW

35 FIREARMS AND APPROXIMATELY 22,032 ASSORTED
ROUNDS OF AMMUNITION SEIZED FROM THE POSSESSION
OF BRYAN MALINOWSKI ON MARCH 19, 2024              DEFENDANTS

## THE UNITED STATES' CONSOLIDATED RESPONSE IN OPPOSITION TO CLAIMANTS' MOTIONS TO DISMISS

The United States, by Jonathan D. Ross, United States Attorney for the Eastern District of

Arkansas, and Amanda Jegley, Assistant U.S. Attorney, for its consolidated response in opposition

to claimants' motions to dismiss (ECF Nos. 7, 9, and 11), states:

## I.      BACKGROUND

On October 7, 2024, the United States filed a civil forfeiture complaint against 35 firearms

and approximately 22,032 assorted rounds of ammunition ("Defendant Property"). (ECF No. 1,

the "Complaint").  The Complaint seeks the forfeiture of the Defendant Property because it was

involved in or used in or intended to be used in federal criminal violations, including assault on a

federal officer, in violation of Title 18, United States Code, Section 111 (as to the silver Colt

Defender .45 caliber handgun bearing serial number DR47793 identified in the Complaint as

Defendant 46), dealing in firearms without a license, in violation of Title 18, United States Code,

Section 922(a)(1)(A), and false and fictitious statements in connection with the acquisition of

firearms, in violation of Title 18, United States Code, Section 922(a)(6), and, therefore, are subject

to forfeiture under Title 18, United States Code, Section 924(d). (ECF No. 1).

1

On November 20, 2024, Maria Del Socco Malinowski, in her individual capacity, her capacity as sole beneficiary of the estate of Brian Malinowski, and as personal representative for the Estate of Bryan Malinowski ("Claimants") filed verified claims (ECF Nos. 3, 4, and 5) as to Defendant Property and, on December 11, 2024, filed motions to dismiss arguing that the Complaint was procedurally and substantively deficient. Claimants argue that dismissal is appropriate because the United States (1) failed to commence a related criminal prosecution; (2) failed to appropriately identify the quantities of ammunition; (3) failed to allege sufficiently detailed facts to connect the Defendant Property to illegal activity; (4) failed to allege sufficiently detailed facts that Mr. Malinowski willfully engaged in dealing firearms or knowingly made false or fictitious statements on ATF Forms 4473 at the time of the purchase; and (5) that Defendant 46 was used in self-defense. (ECF Nos. 7, 9, or 11).

However, the law does not support Claimants' attacks on the Complaint. Instead, accepting all well-pleaded facts as true and the facts in the light most favorable to the Government, the Complaint satisfies the Supplemental Rule G(2) reasonable belief pleading standard. The Complaint was not required to set forth every single act or detail giving rise to the forfeiture. Nonetheless, the Complaint identified sufficient information for a party to investigate and formulate a response. The Complaint sets forth sufficient information such that Claimants could conduct her own investigation, review her own records, identify whether the firearms and ammunition she is claiming were or were not related to the allegations in the Complaint, and identify whether she should admit, deny outright or deny in part, or deny for lack of knowledge the allegations. Nothing more is required at this stage. Thus, this Court should deny the Motion.

## II.    THE COMPLAINT

The Complaint contains 83 numbered paragraphs divided into multiple sections. The first section, entitled "Nature of the Action," contains a concise summary of the nature of the verified forfeiture complaint *in rem* and identifies the defendant property as the 35 firearms and approximately 22,032 assorted rounds of ammunition ("Defendant Firearms and Ammunition"), described more particularly in Exhibit 1, which was attached to the Complaint. The second section, entitled "Jurisdiction and Venue," identifies the statutory and factual bases for jurisdiction and venue.  The third section, entitled "Location of Property," describes the location of the Defendant Firearms and Ammunition, which is in the Eastern District of Arkansas.

The fourth section, entitled "Basis for Forfeiture" sets forth the pertinent forfeiture statutes and legal bases for forfeiture - namely, the theory that the Defendant Firearms and Ammunition were "involved in or used in or intended to be used in" federal criminal violations, specifically, assault on a federal officer, dealing in firearms without a license, and false and fictitious statements in connection with the acquisition of firearms,

The fifth section, entitled "Facts" is divided into multiple subsections. In the subsection labeled "Background," the Complaint describes how the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") works in conjunction with local, national, and international law enforcement to combat cross-border, violent firearms-related crimes in part, by conducting trace requests at the ATF's National Tracing Center ("NTC") to identify the original purchaser of a firearm after it leaves a manufacturer.

In Subsection B, the Complaint describes how, in November 2023, Canadian law enforcement submitted a trace request to the NTC for firearms depicted in photographs received from a confidential informant, and that trace request results showed Bryan Malinowski, a resident

of Arkansas, had purchased multiple firearms shown in the photos obtained by Canadian law enforcement.

Subsection C of the Complaint alleges that Bryan Malinowski purchased approximately 159 firearms from various federal firearms licensees ("FFLs") from 2019 through 2023. This subsection provides a general description of the process required for an individual to purchase a firearm from an FFL. Specifically, the subsection details how an individual purchaser must complete an ATF Form 4473, Firearms Transaction Record and that on each ATF Form 4473 Bryan Malinowski completed for the purchase of each firearm, he indicated he was the actual transferee/buyer of the firearms.

In Subsection D, the Complaint describes how, under the Gun Control Act, FFLs are required to submit a report to ATF when there is a sale or other disposition of multiple firearms to the same purchaser within a certain period of time, specifically, in the case of pistols and revolvers, FFLs must report the sale of two or more pistols or revolvers (or combination thereof) conducted at one time or during any five consecutive business days. ATF uses the information gathered from multiple sales or other disposition transactions to investigate possible firearms trafficking cases. Where one or more firearms recovered from a crime are part of a multiple purchase, it could be an indicator of potential firearms trafficking. This subsection of the Complaint gave multiple examples of multiple sale summary reports showing that Mr. Malinowski purchased three or more of the same firearms and purchased two handguns of the same make and model in multiple instances, and based in part on this information, in December 2023, ATF's Little Rock Field Office opened an investigation into Mr. Malinowski.

In Subsection E, the Complaint describes how the investigation revealed that multiple firearms originally purchased by Mr. Malinowski beginning in or about November 2021 were

4

recovered by law enforcement from other individuals during the commission of a crime. The Complaint provides multiple examples, including information provided by a witness who was a convicted felon that purchased firearms from Mr. Malinowski. The Complaint describes Mr. Malinowski's statements to that witness indicating that he did not do any paperwork for his firearms sales (documenting identifying information of the buyer or otherwise documenting the sale). Additionally, the Complaint describes text messages in which Mr. Malinowski sent lists of firearms and ammunition that Mr. Malinowski had available for purchase, which included Glock pistols, AR-15 pistols, an AR-15 rifle, and boxes of ammunition matching the caliber of the firearm the recipient was interested in purchasing. The Complaint goes on to describe additional firearms purchased by Mr. Malinowski and later recovered from crime scenes, including one recovered in another state from a juvenile gang member.

Subsection F of the Complaint describes in detail purchases made by undercover ATF agents of firearms from Mr. Malinowski at gun shows. Mr. Malinowski stated that he sold at gun shows in Benton (Arkansas), Conway (Arkansas), and at a music hall in Memphis (Tennessee). Mr. Malinowski stated that he typically sold out of AR pistols, like the ones he had on display, very quickly at the Memphis (Tennessee) gun show. Mr. Malinowski claimed that he was a private seller, and, therefore, no paperwork was needed to be completed for a purchase. He stated that he accepted payment via cash, Paypal, and Zelle. In addition to firearms, Mr. Malinowski also offered ammunition for sale during the January 2024 gun show and had ammunition displayed for sale at the January 2024 gun show and other gun shows. Following the firearms purchases, Mr. Malinowski informed the ATF undercover agents that he would be selling firearms at a gun show in Benton, Arkansas the following weekend. Mr. Malinowski also informed undercover agents he could be contacted outside of the gun shows for any purchases and provided his cell phone number

to them.  When the second undercover agent told Mr. Malinowski he had family and friends who might be interested in purchasing a firearm, Mr. Malinowski replied "Okay" and reiterated "Cash, no paper."

Subsection G of the Complaint details how, based on the information obtained in the investigation, the United States District Court for the Eastern District of Arkansas issued a search warrant for Mr. Malinowski's home for evidence of criminal violations committed by Mr. Malinowski, specifically, dealing firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A), and unlawful acquisition of a firearm, in violation of Title 18, United States Code, Section 922(a)(6).  The Complaint details how, when ATF agents breached the front door of the residence, they were met by an individual later identified as Mr. Malinowski, pointing a firearm down the hallway at the first two ATF agents.  Mr. Malinowski fired multiple shots towards Agent 1 and Agent 2, who was struck in the foot by gunfire from Mr. Malinowski. Agent 2 returned fire from his ATF-issued firearm, striking Mr. Malinowski, who later died as a result of his injuries.

Subsection G explains that, following the shooting, the Arkansas State Police Criminal Investigation Division conducted an investigation into the officer involved shooting and recovered the Silver Colt Defender .45 Caliber handgun, bearing serial number DR47793 (Defendant 46), from the Malinowski residence near the area from which Mr. Malinowski fired upon ATF Agents 1 and 2 and the  remaining Defendant Firearms and Ammunition, Defendants 1 through 45, were each seized during the subsequent execution of the federal search and seizure warrant at 4  Durance Court on March 19, 2024.

### III.    LEGAL STANDARD

In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Osborn v. United States,* 918 F.2d 724, 729 n. 6 (8th Cir. 1990); *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980)). In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Id.* (citing *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 731–32 (11th Cir. 1982)). Federal Rule of Civil Procedure 8(a)(1) simply requires that the complaint contain "a short and plain statement of the grounds upon which the court's jurisdiction depends...." *Cf. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 163(1993) (discussing pleading standard under Fed. R. Civ. P. 8(a)(2)).

For purposes of the Court's analysis of Claimants' Motions to Dismiss, facts alleged in the Complaint "are construed in the light most favorable to the Government." *United States v. $22,908.66*, No. 3:22cv290-MOC, 2022 WL 10177676, at *1 (W.D.N.C. Oct. 17, 2022) (citing *United States v. $50,040 in U.S. Currency*, No. 06-04552 WHA, 2007 WL 1176631, at *4 (N.D. Cal. Apr. 20, 2007)); *United States v. $32,920*, No. 2:20cv00137-DCN, 2021 WL 825654, at *3 (D.S.C. March 4, 2021) (citing *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *see also United States v. $5,988,031.33*, No. 2:12cv02289 JTF-tmp, 2014 WL 1338889, at *3 (W.D. Tenn. Mar. 28, 2014) (complaint need not cite all of the facts needed for government to prevail at trial; § 983(a)(3)(D) makes clear that court must review the facts in a "relaxed manner").

Supplemental Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions requires a complaint to "state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). Supplemental Rule G(2) does not, however, require the Government to establish the forfeitability of the Defendant Property by a preponderance of the evidence in the Complaint, "[r]ather, the Court reviews the complaint for facts sufficient to 'support a reasonable belief' that the Government will be able to prove forfeitability at trial by a preponderance of the evidence." *United States v. One 2003 Mercedes Benz CL500*, No. PWG-11357, 2013 U.S. Dist. LEXIS 143041, *7 n.4 (D. Md. Oct. 3, 2013) (quoting Fed. R. Civ. P. Supp. R. G(2)(f)). "The pleading requirements of Supp. R. G(2)(f) are satisfied if the government pleads particular facts demonstrating a [']sufficient connection['] between the property seized and illegal activity." *$22,908.66*, 2022 WL 10177676, at *1 (quoting *United States v. $40,000.00 in United States Currency*, No. 5:17cv398 FL, 2018 WL 2371098, at *2 (E.D.N.C. May 24, 2018) (citing *United States v. Mondragon*, 313 F.3d 862, 866 (4th Cir. 2002)); *see also* 18 U.S.C. § 983(c)(3) (requiring the Government to establish a "substantial connection" between the property and the offense where the Government's theory of forfeiture is that the property was "involved in the commission of a criminal offense").

Congress has provided that "the Government may use evidence gathered after the filing of a complaint for forfeiture" to meet its burden at trial, and also that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. §§ 983(c)(2) & (a)(3)(D); *accord* Fed. R. Civ. P. Supp. R. G(8)(b)(ii); *see also, e.g., $22,908.66*, 2022 WL 10177676, at *2 (denying dismissal; citing, among other reasons, Sections 983(c)(2) and

8

(a)(3)(D)); *United States v. $189,150 in U.S. Currency*, No. RDB-17-0735, 2018 WL 740962, at *2 (D. Md. Feb. 6, 2018) (totality of the circumstances alleged supported reasonable belief that government will be able to meet its burden at trial to show connection between currency and illegal drug activity; government may continue to gather evidence to meet that burden after filing of complaint).

In all, "[t]he Government need only 'state the circumstances giving rise to the forfeiture claim with sufficient particularity' to allow a claimant to conduct a 'meaningful investigation of the facts and draft a responsive pleading.'" *$22,908.66*, 2022 WL 10177676, at *2 (quoting *United States v. $40,041.20 In U.S. Currency Seized From State Dep't Fed. Credit Union Account No. XXX786*, No. DKC 12-1771, 2012 WL 5409753, at *4 (D. Md. Nov. 5, 2012); *Mondragon*, 313 F.3d at 867 (cleaned up); *see also, e.g., $32,920*, No. 2:20cv00137-DCN, 2021 WL 825654, at *2 (same). Construed in the light most favorable to the Government, the Complaint in this case satisfies the reasonable belief pleading standard.

## IV.   THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS CIVIL FORFEITURE ACTION UNDER 28 U.S.C. §§ 1345 and 1355(a)

### 1. The Government is not required to obtain a criminal conviction or commence a related criminal prosecution to file a civil forfeiture.

The Government is not required to commence a related criminal prosecution in order to pursue civil forfeiture of the Defendant Property pursuant to 18 U.S.C. § 924(d)(1). Claimants argue that the return provision of the Firearm Owner's Protection Act of 1986 amended 18 U.S.C. §924(d)(1) such that the Government may not pursue a civil forfeiture without commencing a related criminal prosecution. Claimants are mistaken.

Title 18, United States Code § 924(d)(1) provides:

9

> [U]pon acquittal of the owner or possessor, or dismissal of the charges against him other than upon motion of the Government prior to trial, the seized firearms or ammunition shall be returned forthwith to the owner or possessor or to a person delegated by the owner or possessor unless the return of the firearms or ammunition would place the owner or possessor or his delegate in violation of law. Any action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such seizure.

As an initial matter, Claimants acknowledge the Supreme Court's holding in *U.S. v. One Assortment of 89 Firearms,* 465 U.S. 354, 361 (1984) that "an acquittal in a criminal trial does not bar a civil action for forfeiture even though based on the identical facts." While it is true that the return provision was enacted to overturn *One Assortment of Firearms*, it has no application in civil forfeiture cases where the owner/possessor was never indicted in the first place.

It is a "fundamental canon of statutory construction" that words generally should be "interpreted as taking their ordinary, contemporary, common meaning ... at the time Congress enacted the statute[.]" *Perrin v. United States,* 444 U.S. 37, 42 (1979). "Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law." *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018). Given the plain meaning of the text of 18 U.S.C. § 924(d)(1), the statute simply prescribes what should happen if a criminal prosecution is commenced and the owner/possessor is acquitted or if charges against them are dismissed. Nothing more.

The fact that the statute imposes a 120-day deadline on the Government to commence any action or proceeding for the forfeiture of firearms signals its contemplation of civil forfeitures. Importantly, the statute does not impose any limitations or qualifiers other than acquittal or dismissal. For instance, the statute does not say that the Government is required to commence a criminal prosecution or obtain an indictment or conviction before property is subject to civil

10

forfeiture. It does not say that the Government cannot commence a civil forfeiture absent a criminal prosecution. The statute, therefore, means exactly what it says–the firearms or ammunition shall be returned upon acquittal or dismissal of the charges. If Congress intended to prohibit the Government from commencing a civil forfeiture absent a criminal prosecution, it could have said so in the statute. It did not.

In support of their argument, Claimants cite *United States v. One Smith & Wesson 66 Revolver,* No. CV413-043, 2016 WL 1276443 at *2 (S.D. Ga. Mar. 30, 2016). In that case, the district court denied the Government's motion for reconsideration of its order denying summary judgment in a civil forfeiture case where firearms were seized and the Government failed to prosecute the claimant, who was believed to be prohibited from possessing firearms because he overstayed his visa. In its order, the district court found, that firearms forfeitures under 18 U.S.C. § 924(d)(1), appeared to implicitly require "some sort of conviction under 18 U.S.C. § 922" based upon its reading of the provision of § 924(d)(1) requiring the return of firearms to the owner/possessor in two limited circumstances: (1) acquittal of the owner or possessor, or (2) dismissal of the charges other than upon motion of the Government before trial. *Id.* The district court cited no case law in support of its interpretation, acknowledging "[that portion of § 924(d)(1)] is an awkwardly drafted provision." *Id.*

However, the issue of whether forfeiture pursuant to 18 U.S.C. § 924(d)(1) in the absence of a conviction under 18 U.S.C. § 922(g) is permissible was squarely addressed in *United States v. Japanese Rifle*, 571 F. Supp. 2d 685, 690–91 (E.D. Va. 2008). In *Japanese Rifle,* the claimant in a civil forfeiture claimed he was the innocent owner of firearms seized from his father, a convicted felon, who died four months after the seizure of the firearms—before he had been charged or convicted of a § 922(g) offense. *Id*. at 688. In deciding whether the civil forfeiture of

11

firearms based on a violation of 18 U.S.C. § 922(g) was permissible pursuant to 18 U.S.C. § 924(d)(1), where the putative possessor of the firearms was never convicted of a § 922(g) violation, the district court found that "Section 924(d)(1) explicitly designates any 'violation' of § 922(g)—rather than a conviction—as the triggering event for a civil forfeiture proceeding. Thus, the statute requires only a violation, not a conviction." *Id.* at 690-91 (internal citation omitted).

In interpreting 18 U.S.C. § 924(d)(1), the district court looked to the long history of civil forfeitures *in rem*:

> [T]he proceeding *in rem* stands independent of, and wholly unaffected by any criminal proceeding *in personam.*" *The Palmyra,* 25 U.S. (12 Wheat.) 1, 15, 6 L.Ed. 531 (1827). Accordingly, property may be subject to forfeiture under statute "even if its owner is acquitted of—or never called to defend against—criminal charges." *United States v. 7715 Betsy Bruce Lane,* 906 F.2d 110, 112 (4th Cir. 1990) (quoting *United States v. 3120 Banneker Dr., N.E.,* 691 F.Supp. 497, 499 (D.D.C. 1988)); *see also United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 362, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984) (holding that defendant's acquittal on criminal charges "does not estop the government from proving in a civil proceeding that the firearms should be forfeited pursuant to § 924(d)," due to the "difference in the relative burdens of proof in the criminal and civil actions").

*Id.*[1] In conclusion, the district court found that the absence of a conviction for a § 922(g) violation is no impediment to the forfeiture of the firearms. *Id.* So it is here. The statute does not require the Government to secure an indictment to civilly forfeit firearms or ammunition.

---

[1] Likewise, courts have routinely held that civil forfeiture in non-firearms cases does not require a criminal conviction. *See, e.g.*, *United States v. 2005 Jeep Cherokee Ltd.*, No. 12–cv–720–wmc, 2013 WL 6440508, *2 (W.D. Wis. Dec. 9, 2013) (holding that "government may institute a civil forfeiture action against the defendant property without first obtaining conviction"); *United States v. v. $26,970 in U.S. Currency*, No. 1:13–cv–01935–JMS–DKL, 2014 WL 3846058, *4 (S.D. Ind. Aug. 5, 2014) (denying a motion to dismiss the complaint in which pro se claimant argued that forfeiture required a conviction holding that civil forfeiture is not dependent on a prosecution or conviction); *United States v. $39,000 in U.S. Currency*, No. 04-2902 ML/AN, 2005 WL 2600217, *3 (W.D. Tenn. Oct. 11, 2005) (holding that because a criminal conviction is not required for a civil forfeiture, the defendant's suicide before trial in the criminal case did not

Finally, Claimants complain that commencing a forfeiture without a parallel prosection precludes exercise of several protections of the Fifth and Sixth Amendment. However, the text of the Fifth Amendment refers to a "person," and the Sixth Amendment refers to the "accused." As Claimants acknowledge in their brief, in a civil forfeiture *in rem*, it is the property which is proceeded against as the defendant, rather than the person. *See Via Mat In'l S. Am. Ltd. v. United States,* 446 F. 3d, 1258, 1264 (11th Cir. 2006) (a civil forfeiture proceeding is not an action against claimant but rather is an in rem action against the property); *see also United States v. Cherry*, 330 F.3d 658, 668 n.16 (4th Cir. 2003) ("The most notable distinction between civil and criminal forfeiture is that civil forfeiture proceedings are brought against property, not against the property owner; the owner's culpability is irrelevant in deciding whether property should be forfeited."). Claimants cite no authority that property named in a civil forfeiture *in rem* is entitled to the protections of the Fifth and Sixth Amendment, therefore, their argument fails. Accordingly, dismissal of the Complaint for lack of subject matter jurisdiction is inappropriate.

## 2. The Government particularly named and identified the ammunition subject to forfeiture.

Pursuant to Rule G(2), a complaint for forfeiture *in rem* must describe the property with "reasonable particularity." 18 U.S.C. § 924(d)(2)(C) includes its own special particularity requirement requiring that all firearms and "quantities of ammunition" subject to seizure, forfeiture, and disposition under the Gun Control Act must be particularly named and individually identified as having been involved in or used in the underlying violation. Neither the statute nor

---

bar the civil forfeiture).]

the rule requires the Government to specifically identify the caliber or manufacturer of ammunition and Claimants cite no case law mandating such a requirement.

Here, the Complaint complies with § 924(d)(2)(C)'s particularity requirement by naming and identifying on Exhibit 1 each of the 35 firearms to be forfeited as well as the approximately 22,032 assorted rounds of ammunition broken into 11 separate assets each identified by a specifically-assigned asset identification number.  The Complaint further specifies the date on which the firearms and ammunition were seized (*i.e.,* March 19, 2024), the location of the seizure (*i.e.* the Malinowski residence), and the person from whom they were seized (*i.e.* Mr. Malinowski). (*See* ECF No. 1 at ¶¶ 1, 78-80.)  Notably, there was enough information in the Complaint that Claimants, in their capacities as sole beneficiary and as personal representative of the estate of Mr. Malinowski, filed verified claims asserting an interest in the Ammunition Defendants. Claimant's arguments are essentially requests for information and more properly suited for civil forfeiture discovery, but do not form a basis for dismissal. Accordingly, the Complaint complies with the requirements of Supp. Rule G(2) and 18 U.S.C. § 924(d)(2)(C) and dismissal of the Complaint for lack of subject matter jurisdiction is not warranted.

## V.    THE COMPAINT ADEQUATELY STATES CLAIMS UPON WHICH RELIEF CAN BE GRANTED

Although the law clearly requires application of Supplement Rule G(2)'s reasonable belief pleading standard, nothing in Supplemental Rule G specifically or the Federal Rules of Civil Procedure more generally requires the Government to identify facts with such specificity that the claimant is provided with a step-by-step chronological statement of every single action forming the basis for forfeiture.  Simply put, the law simply does not require the Government to assert every detail in the Complaint.

14

Nor does the law require the Government to plead facts sufficient to rebut affirmative defenses. *United States v. $200,000 in U.S. Currency*, 2:22cv7443, 2023 WL 4291991, *4 (C.D. Cal. May 25, 2023) ("complaint 'need not anticipate, and attempt to plead around, potential affirmative defenses'"; denying motion to dismiss complaint where government alleged facts to support reasonable belief that it would be able to meet its burden at trial as Supplemental Rule G(2) requires). For example, in this case, the Government was not required at the Complaint stage to attempt to anticipate or allege facts sufficient to rebut any possible future allegations by Claimants that that Claimants had or lacked knowledge as to the underlying criminal violations.

Finally, at the pleading stage, the law does not require the Government to plead facts to meet its ultimate trial burden. *$32,920*, 2021 WL 825654, at *4 (at pleading stage, government is not required to present evidence sufficient to establish property's forfeitability; 18 U.S.C. § 983(c)(2) "expressly provides that the government may use evidence gathered after the filing of a forfeiture complaint to meet its burden of proof. This provision in [§ 983(c)(2)] would be meaningless if the government were required to meet the preponderance standard merely to commence an action."

Indeed, when filing a civil forfeiture complaint, "the government is not required to prove its case simply to get in the courthouse door." *United States v. Real Prop. Located at 5208 Los Franciscos Way, Los Angeles, Cal.*, 385 F.3d 1187, 1193 (9th Cir. 2004); *United States v. $74,500 in U.S. Currency*, No. RDB-10-3380, 2011 WL 2712604, *2 (D. Md. July 11, 2011) (under Rule G(8)(b), a complaint is sufficient if it meets the reasonable belief standard in Rule G(2)(f), which was derived from Fourth Circuit's decision in *Mondragon*; government does not have to prove its case to get in courthouse door). Rather, the Government meets its pleading requirement by "stat[ing] the circumstances giving rise to the forfeiture claim with sufficient particularity to allow

15

a claimant to conduct a meaningful investigation of the facts and draft a responsive pleading."
*$40,041.20*, No. DKC 12-1771, 2012 WL 5409753, at *4 (cleaned up).  The Government has sufficiently stated such circumstances here.

1.  **The Government has alleged sufficiently detailed facts that Bryan Malinowski "willfully" engaged in the business of dealing firearms without a license and that he "knowingly" made false statements in the acquisition of firearms.**

Claimants argue that the Government's pleading requirement demands that it sufficiently detail facts that a reasonable belief exists that it could prove at trial beyond a reasonable doubt that Bryan Malinowski willfully engaged in the business of dealing firearms and that he knowingly made false statements in the acquisition of firearms. As an initial matter, Claimants misconstrue the pleading requirement of Supplemental Rule G(2) and the burden of proof in a civil forfeiture case, such as this one.  Claimants argue, incorrectly, that the Government must prove each element of the underlying criminal offenses beyond a reasonable doubt.  However, this is an *in rem* civil forfeiture proceeding against the Defendant Property rather than an *in personam* criminal case against an individual.  At trial, the Government will be required to prove the forfeitability of the Defendant Property by a preponderance of the evidence.  *See* 18 U.S.C. § 983(c)(1).

At the pleading stage, however, Supplemental Rule G(2) requires only that the Complaint "state sufficiently detailed facts to support a reasonable belief" that the Government will be able to prove the forfeitability of the Defendant Property at trial by a preponderance of the evidence. *See One 2003 Mercedes Benz*, 2013 U.S. Dist. LEXIS 143041, *7 n.4 (quoting Fed. R. Civ. P. Supp. R. G(2)(f); *see also United States v. $20,000 in U.S. Currency*, 589 F. Supp. 3d 240 (D.P.R. 2022) (denying motion to dismiss finding that the Complaint, along with agent's supporting declaration, was sufficient at the pleading stage to create a reasonable belief that the Government

16

would be able to establish at trial that there is a substantial connection between defendant currency and controlled substances sales); *United States v. $42,600*, 409 F. Supp. 3d 671 (S.D. Ind. 2019) (noting that CAFRA abrogated requirement that government allege facts establishing probable cause in complaint; government need only allege fact which, if true, established a reasonable belief that government would be able to meet its burden at trial including demonstrating a substantial connection between seized currency and criminal drug offense). The burden of proof attaches at trial, not the pleading stage. The question at this stage of the case is not whether the Complaint proves the forfeitability of the Defendant Property by a preponderance of the evidence, it is whether the Complaint sufficiently alleges a substantial connection between the Defendant Property and the underlying criminal offenses. The Complaint satisfies this requirement.

Section 924(d)(1) provides for forfeiture of firearms and ammunition involved in criminal violations of the Gun Control Act ("GCA") itself or any other violation of any other federal criminal law. Under § 924(d)(1), some forfeiture predicate violations must be "willful," and others must be "knowing," and others even if the violations are only "intended" if the intent is proven by clear and convincing evidence. *See* 18 U.S.C. § 924(d)(1) and (3).

Under 18 U.S.C. § 922(a)(1)(A) it is unlawful to engage in the business of dealing in firearms without a license. 18 U.S.C. § 922(a)(1)(A). To prove a criminal violation of § 922(a)(1)(A), the Government must prove the following elements:

1. The defendant was not licensed to deal firearms; and

2. The defendant willfully engaged in the business of dealing firearms.

*Bryan v. United States*, 524 U.S. 184, 186, 196 (1998). Firearms and ammunition involved in willful violations of § 922(a)(1)(A) are forfeitable under § 924(d)(1), as are firearm and ammunition intended to be used in violations of § 922(a)(1)(A) where such intent can be

17

demonstrated by clear and convincing evidence. *See* 18 U.S.C. § 924(d)(1) and (d)(3).

Under 18 U.S.C. § 922(a)(6) it is unlawful to make a false statement or representation during a firearm purchase from a federally licensed firearms dealer. To prove a criminal violation of 18 U.S.C. § 922(a)(6), the Government must prove the following elements:

1. the defendant knowingly made a false or fictitious oral or written statement;

2. the statement was material to the lawfulness of the sale or disposition of a firearm; and

3. the statement was intended or likely to deceive a firearms dealer

*United States v. Abramski*, 706 F.3d 307, 315 (4th Cir. 2013), *aff'd, Abramski v. United States*, 134 S. Ct. 2259 (2014). Any firearm or ammunition involved in or used in any knowing violation of § 922(a)(6) is forfeitable under § 924(d)(1).

The Supreme Court, in *Bryan v. United States*, 524 U.S. 184 (1998), explained the difference between the knowing and willful standards: While a "knowing" violator need know only the facts that constitute the offense, a "willful" violator must also act "with knowledge that his conduct was unlawful," although the Government need not prove that the violator was aware of the particular law being violated. 524 U.S. at 191-99. There are ample facts alleged in the Complaint to support the *mens rea* requirements of § 924(d)(1) for violations of both §§ 922(a)(1)(A) and 922(a)(6).

Paragraphs 16 through 26 of the Complaint describe the process for purchasing a firearm from an FFL. The Complaint then describes the requirements necessary for filling out the ATF Form 4473, Firearms Transaction Record, including the fact that it requires the applicant to answer whether the purchaser is the actual transferee/buyer of the firearms listed and includes warnings about false statements being a crime punishable as a felony under federal law. (ECF No. 1, ¶ 20).

As the Complaint states in Paragraph 21, the instructions for the ATF Form 4473 make clear that an individual purchasing a firearm with the intention of selling the firearm to a third party for money is not the actual transferee/buyer for purposes of the ATF Form 4473. The Complaint further describes how the ATF reviewed the records maintained by various FFLs where Mr. Malinowski purchased firearms, including ATF Forms 4473 and that the FFLs provided ATF with access to records for all firearms purchased by Mr. Malinowski from the FFLs. (ECF No. 1, ¶¶23 and 24). On each ATF Form 4473 Mr. Malinowski filled out for the purchase of each firearm, he indicated he was the actual transferee/buyer of the firearms. (ECF No. 1, at ¶26).

Claimants assert that Bryan Malinowski was the "actual buyer" of the firearms and cites to several facts and exhibits outside of the pleadings in support of their position. This is inappropriate for several reasons. First, in ruling on a motion to dismiss, the court should not consider matters outside the pleadings. *United States v. $70,990,605*, 4 F. Supp. 3d 189, 195-196 n.2 (D.D.C. 2014). Second, on a motion to dismiss, the plaintiff's allegations are assumed to be true and "all reasonable inferences are drawn in the plaintiff's favor." *United States v. $29,266*, 96 F. Supp. 2d 806, 809 (N.D. Ill. 2000). "When the moving party attaches extraneous exhibits to a motion to dismiss, 'the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 and proceed in accordance with the latter rule, or exclude the documents attached to the motion to dismiss and continue under Rule 12.'" *United States v. $299,745 in U.S. Currency*, No. 1:23-cv-01584-SEB-MKK, 2024 WL 1908114, *3-4 (S.D. Ind. May 1, 2024). Claimants have not submitted a statement of undisputed facts or complied with any of the procedural or local rules governing the submission of motions for summary judgment. Finally, the law does not require the Government to "anticipate, and attempt to plead around, potential affirmative defenses." *$200,000 in U.S. Currency*, 2023 WL 4291991 at *4.

19

The Complaint describes how, from 2019 through 2023, Mr. Malinowski purchased approximately 159 firearms from various FFLs, and, between in or about November 2021 and in or about December 2023, Mr. Malinowski purchased approximately 92 handguns (i.e. pistols and revolvers), from a single FFL in North Little Rock, Arkansas (the "North Little Rock FFL"), with multiple purchases of the same make and model firearms, sometimes in the same day. (ECF No. 1, ¶¶16, 29, 30 and 31). As the Complaint points out, multiple purchases of firearms with the same make and model may indicate that an individual is engaged in the business of dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, rather than for occasional sales or enhancing a personal collection. (ECF No. 1, ¶32). Additionally, where one or more firearms recovered from a crime are part of a multiple purchase, it could be an indicator of potential firearms trafficking. (ECF No. 1, ¶28).

The Complaint explains how the time between a purchase of a firearm and the recovery of the firearm at a crime scene, known as the "time-to-crime," is also a potential indicator of illegal firearms trafficking. (ECF No. 1, ¶¶23 and 24). For illustration, the Complaint details how a Glock, Model 45, pistol originally purchased by Mr. Malinowski on April 20, 2022, was later recovered during a traffic stop from a convicted felon (hereinafter, "W-1") who was prohibited from possessing a firearm and the time between Mr. Malinowski's original purchase of the firearm and the recovery of the firearm from W-1 was approximately 15 days. (ECF No. 1, ¶¶36, 37).

Paragraph 41 of the Complaint details how W-1 indicated that he began purchasing firearms from Mr. Malinowski after Mr. Malinowski confirmed that he did not do any paperwork for his firearms sales (documenting identifying information of the buyer or otherwise documenting the sale). The Complaint states that, following a gun show, W-1 corresponded with Mr. Malinowski via text message regarding the purchase of firearms and Mr. Malinowski sent W-1

20

lists of firearms and ammunition that Mr. Malinowski had available for purchase. (ECF No. 1, ¶42). As the Complaint lays out, the investigation revealed that multiple firearms originally purchased by Mr. Malinowski beginning in or about November 2021 were recovered by law enforcement from other individuals during the commission of a crime. (ECF No. 1, ¶¶34, 44, 45, 46).

During its investigation, ATF learned that Mr. Malinowski sold firearms and ammunition at various gun shows in Arkansas and elsewhere. (ECF No. 1, ¶47). ATF Special Agents, acting in an undercover capacity, conducted undercover purchases of three firearms from Mr. Malinowski at a G&S Promotions gun show in Conway, Arkansas in January 2024. (ECF No. 1, ¶49). Mr. Malinowski made several statements, including that he sold at gun shows in Arkansas and in Memphis, Tennessee. (ECF No. 1, ¶52). Mr. Malinowski stated that he typically sold out of AR pistols very quickly at the Memphis gun show. (*Id.*). Mr. Malinowski claimed that he was a private seller, and, therefore, no paperwork was needed to be completed for a purchase and that he accepted payment via cash, Paypal, and Zelle. (ECF No. 1, ¶53).

Mr. Malinowski had purchased one firearm the day before he sold it to the first undercover agent at the January 2024 gun show and another approximately 52 days prior to the January 2024 gun show. (ECF No. 1, ¶¶58, 59). Following the firearms purchases, Mr. Malinowski informed the ATF undercover agents that he would be selling firearms at a gun show in Benton, Arkansas the following weekend. (ECF No. 1, ¶62). Mr. Malinowski also informed undercover agents he could be contacted outside of the gun shows for any purchases and provided his cell phone number to them. (ECF No. 1, ¶63). When the second undercover agent told Mr. Malinowski he had family and friends who might be interested in purchasing a firearm, Mr. Malinowski replied "Okay" and reiterated "Cash, no paper." (ECF No. 1, ¶64). Importantly, the Complaint alleges that Mr.

Malinowski did not possess a Federal Firearms License to engage in the business of dealing firearms. (ECF No. 1, ¶48).

The Complaint also cited several examples showing that Mr. Malinowski sold guns at a profit. For instance, one of the firearms sold to ATF undercover agents was priced approximately 50 percent higher than the original purchase price. (ECF No. 1, ¶59). Another firearm sold to ATF undercover agents was priced more than 100 percent higher than the original purchase price. (ECF No. 1, ¶60).

Additionally, as the Complaint states, Defendants 1 through 34 are firearms recovered from the Malinowski residence were either (1) tagged for sale at the time of seizure; (2) listed on the same multiple sales report as firearms recovered by law enforcement from other individuals during the commission of a crime; and/or (3) are the same make and model as other firearms known to have been sold by Mr. Malinowski in the course of his unlicensed dealing. (ECF No. ¶79). In addition, during execution of the federal search warrant at the Malinowski residence, ATF located various documents that appear to be price lists for firearms as well as ammunition. (ECF No. ¶81).

Claimants cite to several facts outside of the pleadings in support of their position that the Complaint fails to allege facts that support a claim that Mr. Malinowski engaged in the business of dealing in firearms. This is inappropriate because the court should not consider matters outside the pleadings. *See $70,990,605*, 4 F. Supp. 3d 189, at 195-196. Nevertheless, Claimants suggest, because of his income as executive director of the Little Rock National Airport, that Mr. Malinowski could not be a dealer in firearms under 27 C.F.R. § 478.11 because selling firearms or ammunition could not be his principal objective of livelihood and profit. They further complain that the Complaint fails to allege facts about Mr. Malinowski's livelihood or that he sold firearms or ammunition to "predominantly" earn a profit. Yet, that is not what the law mandates. *See United*

22

*States v. 99,337 Pieces Counterfeit Native Am. Jewelry*, No. 16-1304-KG-KBN, 2018 WL 1568725, *2 (D.N.M. Mar. 27, 2018) ("government is under no obligation to plead facts in anticipation of any defense potential claimants may have in contravention of forfeiture"; "government has no burden to plead anything about claimant's involvement in or relationship to the defendant property at this stage of the litigation").

Even if the Government were required to plead facts in anticipation of defenses, "the exact percentage of income obtained through the sales is not the test; rather, [courts] have recognized that the statute focuses on the defendant's motivation in engaging in the sales." *United States v. Focia,* 869 F.3d 1269, 1282 (11th Cir. 2017) (citing *United States v. Bailey*, 123 F.3d 1381, 1392 (11th Cir. 1997) ("In determining whether one is engaged in the business of dealing in firearms, the finder of fact must examine the intent of the actor and all circumstances surrounding the acts alleged to constitute engaging in business.") "[A] defendant who maintains a full-time job but also sells firearms in his spare time is not automatically excluded from the statute's reach." *Id. (citations omitted).* The Complaint alleges multiple examples of firearms sales conducted by Mr. Malinowski and several examples showing he sold firearms at a profit, which, at the pleading stage, are facts assumed to be true. Even so, factual questions such as these are precisely the type of issues that civil discovery was designed to address and are not an appropriate basis for dismissal.

In sum, the Complaint alleges numerous facts that support a reasonable belief it could prove the requisite *mens rea* for forfeiture at trial. The Complaint discusses the volume and frequency of firearms purchases made by Mr. Malinowski, the time to crime, the time from purchase to sale to third parties, the recovery of firearms purchased by Mr. Malinowski from crime scenes, the fact that he made a profit from sales, the fact that he did not require paperwork and accepted cash or electronic payment, and that he appeared to maintain price lists for firearms and ammunition.

23

Considered as a whole, the facts alleged in the Complaint support the conclusion that the United States could establish the required *mens rea* for each offense as to Firearm Defendants 1 through 34 and the Ammunition Defendants.

**2. The Government has alleged sufficiently detailed facts connecting Firearm Defendants 1 through 34 to willful or intended criminal violations of 18 U.S.C. § 922(a)(1)(A).**

Claimants argue that the Complaint fails to make factual allegations against all but four Defendant Firearms connecting them to a criminal violation of 18 U.S.C. § 922(a)(1)(A). The GCA makes firearms and ammunition involved in certain intended GCA violations, including Section 922(a)(1)(A), predicates for forfeiture if there is clear and convincing evidence of an *intent to use* the subject firearms or ammunition in the criminal violation, although they were not actually used. Section 922(a)(1)(A), engaging in business as a dealer of firearms without a license, is listed as an inchoate forfeiture predicate in Section 924(d)(3). 18 U.S.C. § 924(d)(1) and (d)(3).

With respect to Firearm Defendants involved in violations of 18 U.S.C. § 922(a)(1)(A), the Complaint details the fact that multiple sale summary reports showed that between November 2021 and December 2023, Mr. Malinowski purchased three or more of the same firearms, as set forth below:

    a.    approximately twenty-four (24) Glock, Model 45, pistols;
    b.    approximately nine (9) Fed Arm, Model FR-16, pistols;
    c.    approximately nine (9) Beretta, Model 92A, pistols;
    d.    approximately seven (7) North American Arms, Model NA22, pistols;
    e.    approximately four (4) Glock, Model 22, pistols;
    f.    approximately four (4) SAR, Model SAR9, pistols;
    g.    approximately three (3) ATI, Model OMNI, pistols;
    h.    approximately three (3) Glock, Model 19, pistols;
    i.    approximately three (3) Glock, Model 17, pistols; and
    j.    approximately three (3) Beretta, Model 92FS.

(ECF No. 1, ¶30). Additionally, as the Complaint explains, Mr. Malinowski purchased two handguns of the same make and model in multiple instances. (*Id.*). The Complaint then cites the example that, during the one-month period between October 13, 2022, and November 10, 2022, multiple sales summaries show that Mr. Malinowski purchased a total of six Glock, Model 45, pistols from the same North Little Rock FFL: two on October 13, 2022, two on October 28, 2022, and two on November 10, 2022. (ECF No. 1, ¶31).

Importantly, the Complaint notes that Defendants 1 through 34 are firearms recovered from the Malinowski residence that were either (1) tagged for sale at the time of seizure; (2) listed on the same multiple sales report as firearms recovered by law enforcement from other individuals during the commission of a crime; and/or (3) are the same make and model as other firearms known to have been sold by Mr. Malinowski in the course of his unlicensed dealing. (ECF No.1, ¶79). In addition, during execution of the federal search warrant at the Malinowski residence, ATF located various documents that appear to be price lists for firearms as well as ammunition. (ECF No. 1, ¶81).

Claimants complain that the Complaint does not identify or specify any Firearm Defendant tagged for sale, firearms present in a multiple summary report, or similar to firearms known to have been sold. However, the Government "does not have to fully prove its case to meet the pleading requirements[.]" *United States v. $15,860 in U.S. Currency*, 962 F. Supp. 2d 835, 839–40 (D. Md. 2013) (Complaint alleging money was unusually packaged and discovered in same house as digital scale containing cocaine residue after claimant was overhead on wiretap arranging drug deal, and that claimant had no legitimate income, satisfied Rule G(2)(f)); *United States v. $40,000 in U.S. Currency*, No. 1:09cv383, 2010 WL 2330353, at *4 (W.D.N.C. May 11, 2010), Report and Recommendation Adopted, 2010 WL 2330352 (W.D.N.C. June 7, 2010) (pleadings do

not have to be sufficient to establish the forfeitability at the time complaint is filed); *United States v. $829,422.42 in U.S. Currency*, No. 3:08cv0094(DJS), 2009 WL 1743753, at \*6 (D. Conn. June 18, 2009) (complaint alleging a money laundering offense was sufficient to satisfy the reasonable belief standard; complaint does not have to present evidence sufficient to establish forfeitability). Claimant's arguments are, in essence, requests for information, and are more properly suited for discovery. Accordingly, Claimants arguments do not form a basis for dismissal.

As previously discussed, the Complaint contains sufficiently detailed factual allegations concerning the volume and frequency of firearms purchases made by Mr. Malinowski, the time to crime, the time from purchase to sale, the recovery of firearms purchased by Mr. Malinowski from crime scenes, sales to witnesses and undercover agents, the price markups on guns sold, the fact that he did not require paperwork and accepted cash or electronic payment, and documents seized that appear to be price lists for firearms and ammunition. Considered as a whole, the facts alleged in the Complaint support the conclusion that the United States could adequately connect Defendant Firearms 1 through 34 to violations of 18 U.S.C. § 922(a)(1)(A).

2. **The Government has alleged sufficiently detailed facts connecting the Ammunition Defendants to willful or intended violations of 18 U.S.C. § 922(a)(1)(A).**

Claimants argue that the Complaint fails to allege how the Ammunition Defendants were involved in the same violations as the Firearm Defendants. However, there are numerous factual allegations in the Complaint that demonstrate how the Ammunition Defendants were similarly involved in criminal violations of 18 U.S.C. § 922(a)(1)(A). The Complaint alleges that, following a gun show, W-1 corresponded with Mr. Malinowski via text message regarding the purchase of firearms. (ECF No. 1, ¶42). In these text messages, Mr. Malinowski sent W-1 lists of firearms and ammunition that Mr. Malinowski had available for purchase, which included Glock pistols, AR-

26

15 pistols, an AR-15 rifle, and boxes of ammunition matching the caliber of the firearm W-1 was interested in purchasing. (*Id.*).

The Complaint then asserts numerous factual allegations surrounding the assertion that, during its investigation, ATF learned that Mr. Malinowski sold firearms and ammunition at various gun shows in Arkansas and elsewhere. (ECF No. 1, ¶47). The Complaint further explains that Bryan Malinowski operated as a vendor at a gun show and had a table with several firearms and several boxes of various types of ammunition on display. (ECF No. 1, ¶¶ 50, 51). The Complaint alleges that, in addition to firearms, Mr. Malinowski also offered ammunition for sale during the January 2024 gun show and had ammunition displayed for sale at the January 2024 gun show and other gun shows. (ECF No. 1, ¶54). In Paragraph 80, the Complaint alleges that, together with his sales of firearms, Mr. Malinowski offered associated ammunition for sale, including via text messages with W-1. Mr. Malinowski also attempted to sell ammunition to ATF undercover agents during the January 2024 gun show and had ammunition on display and available for sale at various gun shows. (*Id.*). Finally, the Complaint alleges that, during execution of the federal search warrant at the Malinowski residence, ATF located various documents that appear to be price lists for firearms as well as ammunition. (ECF No. 1, ¶81).

In sum, the Complaint contains factual allegations concerning the number of rounds seized from Mr. Malinowski, correspondence between Mr. Malinowski and undercover agents and a witness about purchasing ammunition, Malinowski's displays of ammunition for sale at gun shows, and documents seized that appear to be price lists for firearms and ammunition. Considered as a whole, the totality of facts alleged in the Complaint support the conclusion that the United States has alleged sufficiently detailed facts that the Ammunition Defendants were involved in Mr. Malinowski's violations of 18 U.S.C. § 922(a)(1)(A).

27

**3. The Government has alleged sufficiently detailed facts connecting Firearm Defendants 1 through 34 to knowing violations of 18 U.S.C. § 922(a)(6).**

Claimants complain that the Government failed to connect Firearm Defendants 1 through 34 with a specific ATF Form 4473, allege that any Firearm Defendant was purchased by Malinowski from an FFL, or allege or identify a third party on whose "behalf" Bryan Malinowski was purportedly purchasing a firearm at the time he completed an ATF Form 4473.

The Complaint states that, during this investigation, ATF reviewed the records maintained by various FFLs where Mr. Malinowski purchased firearms, including ATF Forms 4473. (ECF No. ¶23). The FFLs provided ATF with access to records for all firearms purchased by Mr. Malinowski from the FFLs. (ECF No. 1, ¶24). Each ATF Form 4473 included Mr. Malinowski's name and his address, 4 Durance Court, Little Rock, Arkansas. (ECF No. 1, ¶25). The Complaint states that, on each ATF Form 4473 Mr. Malinowski filled out for the purchase of each firearm, he indicated he was the actual transferee/buyer of the firearms. (ECF No. 1, ¶26). Accordingly, Claimants argument that the Complaint fails to allege that any Firearm Defendant was purchased by Malinowski from an FFL is simply incorrect.

Regarding their argument that the Government failed to connect Firearm Defendants 1 through 34 with a specific ATF Form 4473, Claimants are mistaken as to what is required to be alleged in the Complaint. The Government is not required to cite all of the facts needed for the Government to prevail at trial in the Complaint. *$5,988,031.33*, 2014 WL 1338889, at *3 (§ 983(a)(3)(D) makes clear that court must review the facts in a "relaxed manner"). It is sufficient that the Complaint alleges that ATF reviewed records maintained by ATF and that, for each Form 4473 Mr. Malinowski filled out for the purchase of each firearm, he indicated he was the actual transferee/buyer of the firearms. (ECF No. 1, ¶¶ 23, 26).

28

In the Complaint, Paragraphs 16 through 26 describe the process for purchasing a firearm from an FFL.  The Complaint then describes the requirements necessary for filling out the ATF Form 4473, Firearms Transaction Record, including the fact that it requires the applicant to answer whether the purchaser is the actual transferee/buyer of the firearms listed and includes warnings about false statements being a crime punishable as a felony under federal law. (ECF No. 1, ¶ 20). As the Complaint states in Paragraph 21, the instructions for the ATF Form 4473 make clear that an individual purchasing a firearm with the intention of selling the firearm to a third party for money is not the actual transferee/buyer for purposes of the ATF Form 4473.  (ECF No. 1, ¶ 21).

Claimants attach a 2023 ATF Form 4473 to their motion. Again, submission of exhibits outside the pleadings on a motion to dismiss is inappropriate, and the allegations in the Complaint are assumed to be true. Claimant first complains that the Government did not quote the language of question 21.a in ATF Form 4473, which states: "Are you the actual transferee/buyer of all the firearm(s) listed on this form…? Warning: You are not the actual transferee/buyer if you are acquiring any of the firearm(s) on behalf of another person." Claimant is not entitled to dictate how the Government pleads its factual allegations. Even so, the Complaint does not misrepresent or misstate the language of the ATF Form 4473 at all. The Complaint states that "ATF Form 4473 specifically asks whether the purchaser is the actual transferee/buyer of the firearms listed and includes warnings about false statements being a crime punishable as a felony under federal law." (ECF No. ¶20). The Complaint then states that "[t]he instructions for the ATF Form 4473 make clear that an individual purchasing a firearm with the intention of selling the firearm to a third party for money is not the actual transferee/buyer for purposes of the ATF Form 4473." (ECF No. ¶21).  There is nothing remotely untrue or misleading about either of these factual allegations when compared to the language of ATF Form 4473.

Claimants next cite *Abramski v. United States,* 573 U.S. 169 (2014) in support of the proposition that the Government was somehow required to identify in the Complaint a third party on whose behalf Mr. Malinowski purchased firearms. *Abramski* does not support that argument. In *Abramski*, the appellee challenged his convictions under § 922(a)(6) and § 924(a)(1)(A) for making false statements on a firearms purchase form for a firearm purchased for his uncle. Abramski filled out an ATF Form 4473, falsely checking "yes" in response to a question on the form, asserting he was the "actual transferee/buyer" when, according to the form's definition he was not. As to Abramski's conviction under § 922(a)(6), the Supreme Court affirmed, holding that responses to the questions posed by ATF Form 4473 are material and that whether the actual buyer is prohibited is irrelevant. Importantly, nowhere does the Court require the Government to identify a third-party recipient of Malinowski's firearms purchases in a civil forfeiture complaint.

In arguing that the Complaint fails to identify a third-party on whose behalf Mr. Malinowski was purchasing a firearm, Claimants also conflate false statements during the purchase of a firearm under 18 U.S.C. § 922(a)(6) with the straw purchase of firearms under 18 U.S.C. § 932(b). However, 18 U.S.C. § 932(b) is not one of the underlying offenses alleged in the Complaint and therefore is inapplicable for purposes of deciding whether the Complaint is sufficient. The Complaint alleges that the Defendant Property was involved in violations of 18 U.S.C. § 922(a)(6) and 18 U.S.C. § 922(a)(1)(A). The Complaint does not allege that the Defendant Property was involved in a straw purchase violation of 18 U.S.C. § 932(b). Accordingly, Claimants arguments and their citation to a particular ATF newsletter to Federal Firearms Licensees from June 2021 for examples of "straw purchasers" are irrelevant to the instant Motions and the issue of whether the Government is required at the pleading stage to identify a third-party on whose behalf Malinowski purchased firearms.

Finally, Claimants attach a portion of the oral argument in the *Abramski* case as an exhibit in support of the proposition that 18 U.S.C. §922(a)(6) is not intended to control sales subsequent to purchase from an FFL. Again, *Abramski* does not control the analysis of whether the Government was required at the pleading stage to identify a third-party on whose behalf Malinowski purchased firearms. Neither does the example posed in the *Firearm Raffles*, FFL Newsletter, Federal Firearms Licensee Information Service, June 2021 cited by Claimants. Nowhere in the Complaint does the Government allege that Mr. Malinowski purchased a firearm for purposes of a raffle. At best, these arguments concern possible defenses to the forfeiture action, which the Government is not required to plead around or attempt to anticipate in its pleading. *$200,000 in U.S. Currency*, 2023 WL 4291991, *4.

The Complaint alleges that Mr. Malinowski completed ATF Forms 4473 for Defendants 1 through 34 and that he falsely stated that he was the actual transferee/buyer of the firearms. The Complaint discusses the volume and frequency of firearms purchases made by Mr. Malinowski, the time to crime, the time from purchase to sale to third parties, sales to undercover ATF agents, sales to other individuals at gun shows, the recovery of firearms purchased by Mr. Malinowski from crime scenes, the fact that he made a profit from sales, the fact that he did not require paperwork and accepted cash or electronic payment, and that he appeared to maintain price lists for firearms and ammunition. The totality of the facts alleged in the Complaint support the conclusion that Defendants 1 through 34 were involved in a violation of Title 18 United States Code, Section 922(a)(6).

4. **The Government has alleged sufficiently detailed facts connecting Defendant 46 to criminal violations of 18 U.S.C. § 111.**

For their final argument for dismissal, Claimants assert that they are entitled to return of

Defendant Firearm 46 because they allege it was used in defense of Mr. Malinowski, his wife, and their home when Mr. Malinowski used it to shoot at ATF agents. Claimants' briefs cite no authority or basis for this argument, aside from a bare, self-serving factual assertion outside the pleadings that Mr. Malinowski was unaware that he was shooting at law enforcement. Nevertheless, dismissal of the Complaint is still inappropriate, as the Government is not required to plead facts in anticipation of defenses and even if it were, there are ample factual allegations in the Complaint that Defendant Firearm 46 was involved in an assault on a federal officer in a violation of 18 U.S.C. § 111.

Violations of 18 U.S.C. § 111 make it unlawful to assault a federal officer with a dangerous or deadly weapon. Under 18 U.S.C. § 111, the crime of assault on a federal officer with a dangerous or deadly weapon has three elements, which are:

1.   the defendant forcibly assaulted a federal officer with a deadly or dangerous weapon;

2.   the assault was done voluntarily and intentionally; and

3.   at the time of the assault, the officer was doing what he was employed by the federal government to do.

8th Cir. Model Jury Instr. 6.18.111.

The Complaint states that, based on the information obtained in ATF's investigation, the U.S. District Court for the Eastern District of Arkansas issued a search warrant for Mr. Malinowski's home for evidence of criminal violations committed by Mr. Malinowski, specifically, dealing firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A), and unlawful acquisition of a firearm, in violation of Title 18, United States Code, Section 922(a)(6). (ECF No. 1, ¶¶ 65, 68). The Complaint alleges when ATF agents breached the front door of the residence, they were met by an individual later identified as Mr.

32

Malinowski, pointing a firearm down the hallway at the first two ATF agents. (ECF No. 1, ¶69). Mr. Malinowski fired multiple shots towards Agent 1 and Agent 2, and Agent 2 was struck in the foot by gunfire from Mr. Malinowski. (ECF No. 1, ¶70, 71). Agent 2 returned fire with his ATF-issued firearm, striking Mr. Malinowski, who later died of his injuries. (ECF No. 1, ¶¶72, 73).

The Complaint details that, following the shooting, the Arkansas State Police Criminal Investigation Division conducted an investigation into the-officer involved shooting that resulted in Mr. Malinowski being struck by gunfire. (ECF No. 1, ¶ 74). As the Complaint states, during its investigation, pursuant to the execution of a state search warrant on March 19, 2024, the Arkansas State Police recovered the Silver Colt Defender .45 Caliber handgun, bearing serial number DR47793 (Defendant 46), from the Malinowski residence near the area from which Mr. Malinowski fired upon ATF Agents 1 and 2. (ECF No. 1, ¶ 75). Multiple bullet holes consistent with the size of a .45 caliber projectile were documented in the entryway of the Malinowski residence where ATF agents entered. (ECF No. 1, ¶ 76). Finally, the Complaint alleges the silver Colt Defender .45 caliber handgun, bearing serial number DR47793 (Firearm Defendant 46), is the firearm used by Mr. Malinowski to fire upon Agents 1 and 2 in violation of Title 18, United States Code, Section 111. (ECF No. 1, ¶ 77). Accordingly, the totality of the facts alleged in the Complaint support the conclusion that Defendant 46 was used in a violation of 18 U.S.C. § 111 and dismissal is not appropriate.

## CONCLUSION

Because the Government is not required to commence a criminal prosecution and has sufficiently pleaded with particularity the Defendant Property, dismissal for lack of subject matter jurisdiction is not warranted and Claimants' Rule 12(b)(1) motion to dismiss should be denied. The information set forth in the Complaint is more than sufficient to support a reasonable belief

that the Government will be able to establish at trial that the Defendant Property was involved in the following federal criminal violations: assault on a federal officer, in violation of Title 18, United States Code, Section 111 (as to the silver Colt Defender .45 caliber handgun bearing serial number DR47793 identified as Defendant 46), dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A), and false and fictitious statements in connection with the acquisition of firearms, in violation of Title 18, United States Code, Section 922(a)(6), and, therefore, the Defendant Property is subject to forfeiture under Title 18, United States Code, Section 924(d) and Claimants' motions should be denied.

Claimants seek to compel the Government to lay out, in a level of detail not required anywhere in the law, all facts to be proven at trial in the Complaint. This Court should not allow Claimant to distort the pleading standards and dismissal law to produce such a result. Instead, this Court should decline to dismiss the Complaint, should receive an Answer from Claimant, and should then permit discovery to proceed in due course. Claimant's bases for dismissal of the Complaint are meritless. Accordingly, this Court should deny the Motion to Dismiss.

WHEREFORE, the United States respectfully requests that this Court deny Claimants' Motions to Dismiss, and for all other just and proper relief.

Respectfully submitted,

JONATHAN D. ROSS
UNITED STATES ATTORNEY

AMANDA JEGLEY
Assistant United States Attorney
Arkansas Bar No. 94172
Attorney for the United States
P. O. Box 1229
Little Rock, AR 72203
Telephone: (501) 340-2600
E-mail: Amanda.jegley@usdoj.gov

34